UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XIFIN, INC.,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>FIREFLY DIAGNOSTICS, INC.,<br><br>　　　　　　　　　　Defendant. | Case No.: 3:17-cv-00742-BEN-KSC<br><br>**ORDER:**<br><br>**1) GRANTING PLAINTIFF'S MOTION TO FILE DOCUMENTS UNDER SEAL; and**<br><br>**2) GRANTING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT** |

Plaintiff brought this breach of contract action against Defendant seeking recovery of damages. Plaintiff now moves for an entry of default judgment against Defendant. Defendant did not respond to Plaintiff's motion, and has not made an appearance in this case. For the reasons set forth below, Plaintiff's motions are **GRANTED**.

## BACKGROUND

XIFIN, Inc. ("XIFIN") is a San Diego healthcare information technology company incorporated in California that provides its clients with cloud-based billing services. (Docket No. 1, "Compl." ¶¶ 5, 7.) Firefly Diagnostics, Inc. ("Firefly") is a company that provides certain testing and diagnostic goods and services to healthcare providers; it is incorporated and maintains its principal place of business in Ohio. (*Id.* ¶¶ 6, 9.)

1

On June 12, 2015, XIFIN entered into two written contracts with Firefly: (1) the "RPM[1] Contract," and (2) the "LIS[2] Contract" (together, the "Contracts"). Pursuant to the RPM Contract, XIFIN provided Firefly with cloud-based laboratory diagnostic billing services and outsourced accounts receivable and billing management services. (*Id.* ¶ 11.) Pursuant to the LIS Contract, XIFIN provided cloud-based laboratory information services to Firefly for pathology services "including, but not limited to, histology workflow management, web-based remote specimen accessioning, barcode-based specimen tracking, integration of digital pathology devices for slide image capturing, and clinical history and case review." (*Id.* ¶ 119.)

Beginning in December 2016, Firefly became delinquent in paying service fees under both contracts. (Declaration of Tammy Lawrence ("Lawrence Decl.") ¶ 16.) XIFIN advised Firefly's CEO, Jeff Garshon, on several occasions regarding its delinquent account by both email and teleconference. (*Id.* ¶ 17.) Firefly did not dispute the amount of service fees owed or claim that XIFIN itself breached either contract, and ultimately failed to pay the amounts due. (*Id.* ¶¶ 16-17.) On December 13, 2016, XIFIN provided notice of Firefly's material breach of both contracts. (*Id.* ¶ 18.) On February 14, 2017, XIFIN terminated both contracts because Firefly had still failed to pay the amounts due. (*Id.* ¶ 19.)

On April 12, 2017, XIFIN filed this action against Firefly for breach of the Contracts. (Docket No. 1.) On April 26, 2017, XIFIN filed a proof of service, indicating it had properly served Firefly. (Docket No. 4.) When Firefly failed to respond to its Complaint, XIFIN filed a request for entry of default, which the Clerk of Court granted

---

[1] RPM is an acronym for Revenue Performance Management system, which is the "proprietary internet-based accounts receivable and billing management system" XIFIN developed to provide its cloud-based billing services. (Compl. ¶ 7.)

[2] LIS is an acronym for laboratory information system, which is "a separate cloud-based laboratory information system to manage diagnostic, financial, and clinical information." (Compl. ¶ 8.)

on July 10, 2017. (Docket No. 6.) XIFIN now moves for default judgment against Firefly.

## DISCUSSION

### A. Motion to Seal

XIFIN files a copy of the RPM and LIS contracts requesting they be filed under seal. (Docket No. 7.) "[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cnty. of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto Ins. Co.,* 331 F.3d 1122, 1135 (9th Cir. 2003)). A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz,* 331 F.3d at 1135. Since the contracts that XIFIN requests to file under seal are "more than tangentially related to the merits of the case," XIFIN must show "compelling reasons" for the request to seal. *Ctr. for Auto Safety v. Chrysler Grp., LLC,* 809 F.3d 1092, 1096-98 (9th Cir. 2016).

XIFIN asserts both contracts "contain commercially sensitive business information including . . . Plaintiff's pricing structure for the rendition of services under the contracts and proprietary protocols and processes." (Docket No. 9.) Counsel for XIFIN explains that "[p]ublic release of this information would harm . . . XIFIN, if those terms were to be obtained by either current or future clients or competitors in the same market as XIFIN." (Declaration of John D. Hershberger in Support of Motion to Seal, Docket No. 7-2 ¶ 3.) The Court finds the potential harm to XIFIN's competitive standing constitutes "compelling reasons," and therefore **GRANTS** Plaintiff's Motion to Seal. *See Nixon*, 435 U.S. at 598.

### B. Motion for Default Judgment

Federal Rule of Civil Procedure 55(b)(2) provides for the entry of default judgment by the court. "The district court's decision whether to enter a default judgment

3

3:17-cv-00742-BEN-KSC

is a discretionary one." *Microsoft Corp. v. Ricketts*, No. C 06-06712 WHA, 2007 WL 1520965, at *1 (N.D. Cal. May 24, 2007) (quoting *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980)). A district court considers the following factors:

> (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Microsoft Corp.*, 2007 WL 1520965, at *1-2 (quoting *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986)).

In determining the merits of a motion for default judgment "well-pleaded factual allegations are taken as true, except as to the amount of damages." *Id.* at *2 (citing *Fair Hous. Of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The Court has considered the *Eitel* factors and finds these factors favor entry of default against Firefly.

1. Possibility of Prejudice to Plaintiff

XIFIN claims Firefly used its services without paying amounts due under the Contracts. Firefly has refused to participate in these proceedings. If a default judgment is not entered, XIFIN will suffer prejudice because it will be without other recourse for recovery. *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (finding that without a default judgment, plaintiff would have no other recourse and suffer prejudice). Therefore, this factor weighs in favor of granting default judgment against Firefly.

2. Merits of Plaintiff's Claim & Sufficiency of Complaint

The second and third *Eitel* factors look to the merits of the plaintiff's substantive claim, and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471-72. The Ninth Circuit has suggested that these two factors require that a plaintiff "state a claim on which the [plaintiff] may recover." *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (citing *Danning v. Lavine*, 572 F.2d 1386,

4

1388 (9th Cir. 1978)). In its complaint, XIFIN asserts two breach of contract claims, one for the RPM Contract and one for the LIS Contract. XIFIN attached a copy of each contract, and alleges that it fully performed on the contracts, that Firefly failed to perform, and it was damaged as a result. Therefore, XIFIN alleges sufficient allegations in the Complaint, and the allegations appear to have merit. *See Reichert v. Gen. Ins. Co. of Am.,* 68 Cal. 2d 822, 830 (1968) (elements of breach of contract include: existence of a contract, plaintiff's performance, defendant's breach, and resulting damages to the plaintiff). Thus, these two factors also favor entry of default judgment.

### 3. Amount of Money at Stake

Under the fourth *Eitel* factor, a court considers the amount of money at stake in relation to the seriousness of a party's conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176-77 (C.D. Cal. 2002). Here, Plaintiff seeks an award of $696,132.01[3] in damages for breach of the RPM Contract, and $195,190.13[4] for breach of the LIS Contract. The amount requested is supported by the evidence and proportionate to the harm caused by Firefly's purported breach of the contracts. Accordingly, this factor weighs in favor of granting default judgment.

### 4. Possibility of Dispute Over Material Facts

Firefly has not filed an answer or responded to XIFIN's Complaint, or filed an opposition or responded to the instant motion or XIFIN's motion for the clerk's entry of default judgment. As a result, no dispute concerning material facts has arisen. Therefore, this factor also weighs in favor of granting default judgment against Firefly.

///

---

[3] This amount consists of $256,758.94 in service fees, $19,373.07 in finance charges, and $420,000 in Minimum Service Fees pursuant to the RPM Contract. (Lawrence Decl. ¶ 35.)

[4] This amount consists of $83,862.50 in service fees, $6,327.63 in finance charges, and $105,000 in accelerated Subscription Fees, pursuant to the LIS Contract. (Lawrence Decl. ¶ 46.)

5

5. Whether Default was Due to Excusable Neglect

A court may consider whether there are circumstances surrounding a party's failure to respond constitutes excusable neglect. *See Eitel*, 782 F.2d at 1472. However, a court may find excusable neglect to be lacking where a defendant was properly served with the complaint and notice of default judgment. *See Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). Here, the possibility of excusable neglect is remote. Firefly was properly served with the Complaint, the motion for clerk's default judgment, the Clerk of the Court's entry of default, and the instant motion for this Court's entry of default judgment. (Docket Nos. 4, 5-6, 9). Yet Firefly failed to answer the Complaint and did not oppose the above-referenced motions or object to the Clerk of the Court's entry of default. Accordingly, this factor also weighs in favor of granting default judgment against Firefly.

6. Policy Favoring Decisions on the Merits

The policy favoring resolution of the case on the merits always weighs against default judgment. In this case, however, the other *Eitel* factors outweigh this general policy because of Firefly's "failure to answer Plaintiff's [c]omplaint makes decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177.

In sum, other than the policy of deciding cases on the merits, the totality of the *Eitel* factors weigh in favor of default judgment against Firefly. Therefore, Plaintiff's motion for default judgment is **GRANTED**.

**C. Damages**

XIFIN seeks damages due under the RPM and LIS Contracts. Under Rule 8(a)(3), a plaintiff's demand for relief must be specific, and he "must 'prove up' the amount of damages." *Philip Morris USA Inc. v. Banh*, No. CV 03–4043 GAF (PJWx), 2005 WL 5758392, at *6 (C.D. Cal. Jan. 14, 2005); *Elektra Entmn't Grp., Inc. v. Bryant*, No. CV 03–6371GAF(JTLX), 2004 WL 783123, at *5 (C.D. Cal. Feb. 13, 2004) ("Plaintiffs must 'prove up' the amount of damages that they are claiming."). Rule 54(c) limits the relief that can be sought in a motion for entry of default judgment to that identified in the

complaint. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). *See also PepsiCo*, 238 F. Supp. 2d at 1174 (stating that a default judgment "shall not be different in kind from or exceed in amount that prayed for in the [complaint]"). Also, as noted, a defaulting defendant is not deemed to have admitted facts concerning damages alleged in the complaint. *See id*. at 1177 ("Upon entry of default, all well pleaded facts in the complaint are taken as true, except those relating to damages.") (citing *TeleVideo Sys*., 826 F.2d at 917-18).

XIFIN seeks an award of monetary damages in the amounts of $696,132.01 for the RPM Contract and $195,190.13 for the LIS Contract. To support its damages, XIFIN attached copies of the Contracts, the Declaration of XIFIN's Associate Vice President of Financial Operations, and copies of the invoices reflecting the outstanding balances, which establishes $256,758.94 in service fees are due under the RPM Contract, and $83,862.50 in service fees are due under the LIS Contract. (Lawrence Decl. ¶¶ 20-35, 36-46.) XIFIN also points to the clauses in the Contracts that allow finance charges in the amount of 1.5% per month on overdue balances, which in this case totals $19,373.07 for the RPM Contract and $6,327.63 for the LIS Contract. (*Id.*) XIFIN further identifies the clauses in the Contracts that provide for acceleration of minimum service fees, which amount to $420,000 for the RPM Contract and $105,000 for the LIS Contract. (*Id.*) Thus, XIFIN has sufficiently proven up the amount of damages it is claiming.

## CONCLUSION

For the foregoing reasons, Plaintiff's motions to seal and for default judgment are **GRANTED**. The Clerk of Court shall enter judgment in favor of Plaintiff in the amount of $891,322.14 in total damages.

**IT IS SO ORDERED.**

Dated: March 9, 2018

Hon. Roger T. Benitez
United States District Judge